IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRED JONES,<br><br>        Plaintiff,<br><br>   vs.<br><br>JOHN BURK, et al.,<br><br>        Defendants. | 1:06 CV 0665 LJO WMW PC<br><br>ORDER DENYING IN PART AND<br>GRANTING IN PART MOTION<br>TO DISMISS |

Plaintiff is an inmate at the Merced County Jail proceeding pro se. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983. This proceeding was referred to this court by Local Rule 72-302 pursuant to 28 U.S.C. § 636(b)(1). Pending before the Court is Defendants' motion to dismiss. Plaintiff has opposed the motion.

This action proceeds on the September 8, 2006, second amended complaint. Plaintiff, an inmate in the custody of the Merced County Sheriff's Department at the Merced County Jail, brings this civil rights action against defendant John Burk, former Commander of the Merced County Jail, as well as Sergeant Carbonaro and Ricci Thorenson, Commander of the Merced County Jail. .

Plaintiff's allegations relate to his placement in Administrative Segregation as a result of a physical altercation. Plaintiff was involved in the altercation on April 30, 2006. In addition to his placement in Administrative Segregation, Plaintiff lost certain privileges for thirty days:

1

visiting, television, yard and canteen. Plaintiff alleges that the privileges were removed without any type of hearing.

The specific allegations of the second amended complaint follow. Plaintiff was involved in a "physical altercation" at the Merced County Jail on April 30, 2006. Am. Compl. ¶ 9. As a result, Plaintiff was placed in Administrative Segregation on May 1, 2006. Id. Plaintiff alleges that he lost the privileges of yard, television and canteen for 30 days without any type of notification or hearing. Plaintiff submitted a grievance to Defendant Burk, but it "was never responded to." Id.

Plaintiff alleges that on April 27 or 26, 2006, he arrived that the jail and was "forced to abandon certain strict practices in the religion of Islam. Am. Compl. ¶ 10. Plaintiff attempted to exhaust his "grievances procedures" with staff and to Defendant Burk. Plaintiff does not specifically allege how he appealed to Defendant Burk. Plaintiff spoke to the Chaplain regarding his requests. The Chaplain advised Plaintiff that it was up to staff to determine whether Plaintiff could receive the items. Plaintiff requested prayer oils, a prayer cap, clay, prayer bead and prayer rugs. Id. Plaintiff was advised by Sgt. Carbonaro that "this department don't allow that stuff, and you will not be able to receive it neither." Id. Defendant Burk also denied Plaintiff's request. Sgt. Carbonaro, acting in Burk's capacity after Burk retired, stated that "plaintiff don't need the artifacts to practice Islam." Id.

Plaintiff sought advice from the Jail Chaplain. Plaintiff was referred to an outside cleric. Plaintiff alleges that the outside cleric brought the following items: educational books, prayer beads, prayer oil, cap and rug. Plaintiff was allowed to keep the rug and books (with the exception of a hard-bound Qur'an." Plaintiff spoke to the Jail Chaplain about the other items, and was advised that "staff an jail policy would not allow it." Id.

Defendant Burk retired and was replaced by Defendant Thorenson. Plaintiff presented the issue of denial of religious artifacts to Defendant Thorenson through the inmate grievance

process. The appeal was denied on security grounds. Id., ¶ 11. Plaintiff was interviewed by Defendant Thorenson on August 23, 2006. Plaintiff explained his religious concerns. Plaintiff specifically explained that the prayer oil was not flammable, that the prayer beads were made of plastic, and the skull cap was made of cotton. Plaintiff explained that the prayer clay was made of dirt and clay. Plaintiff indicated his willingness to receive the items subject to inspection .

This action was initiated by the filing of a civil complaint filed by Plaintiff and two other inmates. The court severed the other two Plaintiffs. The court also entered an order dismissing the first amended complaint and granting Plaintiff leave to file a second amended complaint.

## LOSS OF PRIVILEGES

In the order dismissing the first amended complaint, Plaintiff was advised of the following . While the Fifth and Fourteenth Amendments prohibit a state from depriving "any person of life, liberty, or property without due process of law," it is well settled that only a limited range of interests fall within this provision. A due process claim is cognizable only if there is a recognized liberty or property interest at issue. Rizzo v. Dawson, 778 F.2d 527, 530 (9th Cir. 1985). Liberty and property interests protected by the Fifth and Fourteenth Amendments may arise from only two sources, the Due Process Clause itself and the laws of the states. Board of Pardons v. Allen, 482 U.S. 369, 373 (1987); Wolff v. McDonell, 418 U.S. 539, 556-558 (1974). The first step in examining a procedural due process question is to determine whether the state's procedures attending the deprivation were constitutionally sufficient. If there is no protected interest, then the procedural protections of the Due Process Clause do not attach. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 571 (1972); Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Olim v. Wakinekona, 461 U.S. 238, 250 (1983).

In Sandin v. Conner, 515 U.S. 472 (1995), the United States Supreme Court changed the manner in which courts are to determine whether a state created liberty interest exists. Under

Sandin, procedural due process does not attach unless the state subjects an inmate to restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. at 479.

Plaintiff was advised that in the first amended complaint, Plaintiff alleged at most a temporary deprivation of certain privileges. There is no authority for the proposition that such a deprivation constitutes a due process violation. The court found that the allegations in Plaintiff's complaint failed to state a claim for relief. Although the Federal Rules adopt a flexible pleading policy, a complaint must give fair notice and state the elements of the claim plainly and succinctly. Jones v. Community Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984). In the second amended complaint, Plaintiff restates the allegations of the first amended complaint, adding that the loss of privileges were for thirty days. Plaintiff has alleged, at most, a temporary deprivation. There are no facts alleges that Plaintiff suffered a due process violation. This claim must therefore be dismissed for failure to state a claim upon which relief could be granted.

## RELIGIOUS ARTIFACTS

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const., amend. I. Prisoners "retain protections afforded by the First Amendment," including the free exercise of religion. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). However, "'[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" Id. (quoting Price v. Johnson, 334 U.S. 266, 285 (1948)). "In order to establish a free exercise violation, [a prisoner] must show the defendants burdened the practice of his religion, by preventing him from engaging in conduct mandated by his faith, without any justification reasonably related to legitimate penological interests." Freeman v. Arpaio,125 F.3d 732, 736 (9th Cir. 1997). "In order to reach the level of a constitutional violation, the interference with

one's practice of religion 'must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine.'" Freeman, 125 F.3d at 737 (quoting Graham v. C.I.R., 822 F.2d 844, 851 (9th Cir. 1987)).

"To ensure that courts afford appropriate deference to prison officials, . . . prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." O'Lone, 382 U.S. at 349. Under this standard, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). First, "there must be a valid, rational connection between the prison regulation and the legitimate government interest put forward to justify it," and "the governmental objective must itself be a legitimate and neutral one." Id. A second consideration is "whether there are alternative means of exercising the right that remain open to prison inmates." Id. at 90 (internal quotations and citation omitted). A third consideration is "the impact accommodation of the asserted right will have on guards and other inmates, and on the allocation of prison resources generally." Id. "Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation." Id.

Defendants argue that Plaintiff's claim regarding the religious items he requested should be dismissed on the ground that the deprivation was related to a legitimate interest in prison security, and that Plaintiff had alternative means to express his religious beliefs. The security interests involve the threat of violence, drugs, criminal conspiracy, and the violence related to conflicts over personal possessions. Defendants correctly argue that the fourt-factor Turner test applies to this case. Defendants argue that applying this test to his case, there is a logical connection between the prison regulation and the government's legitimate interest in ensuring prison security due to the violence related to conflicts over personal possessions (factor 1). Defendants argue that Plaintiff was provided with some items but not others, and therefore had

alternative means to express his religious beliefs (factor 2).  Because of the constant threat of violence, drugs, criminal conspiracy, and the violence related to conflicts over personal possessions, as well as inmate movement requirements, the impact accommodating Plaintiff's request of some asserted constitutional right is to prevent the traffic of drugs, limit conflicts, and aid in prevention of escape attempts (factor 3).  Defendants argue that the fourth factor is satisfied because there is no accommodation at *de miminis* cost to valid security interests as related to the goal of the regulation.   Defendants contend that the security of the facility, the safety of correctional officers, the safety of other inmates, and the avoidance of escape are all valid and appropriate reasons for avoiding personal property from outside the jail facility.

"The focus of any Rule 12(b)(6) dismissal . . . is the complaint." Schneider v. California Dept. of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).  In considering a motion to dismiss for failure to state a claim, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969).  The federal system is one of notice pleading. Galbraith v. County of Santa Clara, 307 F.3d 1119, 1126 (2002).  In reviewing a Rule 12(b)(6) motion, the court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998); see also Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit 507 U.S. 163, 164 (1993).   "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which apply to section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a).  Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which

it rests." Swierkiewicz, 534 U.S. at 512.

A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Id. at 514. Discovery and summary judgment motions - not motions to dismiss - "define disputed facts" and "dispose of unmeritorious claims." Id. at 512. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003) (*quoting* Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) ("'Pleadings need suffice only to put the opposing party on notice of the claim . . . .'" (*quoting* Fontana v. Haskin, 262 F.3d 871, 977 (9th Cir. 2001))). A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (*citing* Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).

Here, Defendants' argument rests on security concerns. Defendants contend that there are valid security concerns regarding inmate movement, prevention of conflicts over property, drug trafficking and staff safety. However, a reasonable inference can be drawn from the second amended complaint that the items were denied Plaintiff without any valid security concerns. Though Plaintiff's allegations indicate that security concerns were the reason for the denial of the items, an inference can be drawn that Plaintiff disagreed that there was a security concern regarding his specific needs. As noted above, Plaintiff need only plead facts that give Defendants fair notice of the claim. Plaintiff need not specifically plead the absence of security concerns. A reasonable inference can be drawn that Plaintiff disagreed with the security concerns regarding his items. No matter how improbable the facts alleged are, they must be accepted as true for

purposes of the motion. Neitzke v. Williams, 490 U.S. 319, 328-329 (1989); Bernheim v. Litt, 79 F.3d 318, 321 (2nd Cir. 1996) - "Recovery may seem remote and unlikely on the face of the pleading, but that is not the test for dismissal."

      The Turner factors are fact specific. The trial court in Turner conducted a trial in order to determine the facts. In a later case reaffirming the Turner test, the court granted relief on summary judgment. Shaw v. Murphy, 532 U.S. 223 (2001). "In considering a 12(b)(6) motion, we do not inquire whether Plaintiffs will ultimately prevail, only whether they are entitled to evidence to support their claims." Nami v. Fauver, 82 F.3d 63, 65 (3rd Cir. 1996); see Allison v. California Adult Authority, 419 F.2d 822, 823 (9th Cir. 1996). Defendants may ultimately make a showing that security concerns prevent the possession of the items at issue, but such a showing should be made on a motion for summary judgment. If a Rule 12(b)(6) motion presents matters outside the pleadings, and such evidence is considered by the court, "the motion must be treated as one for summary judgment under rule 56. All parties must be given reasonable opportunity to present all the material that is pertinent to the motion." Federal Rule of Civil Procedure 12(d). As to the denial of religious artifacts, the court finds that Plaintiff has pled facts sufficient to state a claim for relief. Plaintiff is entitled to present evidence of the lack of existence of security concerns.

      Plaintiff also sets forth a ground three, Defendant Thorenson's refusal to provide Plaintiff with religious items based on security concerns. The claim is similar to the claim against Defendant Burk. Defendants' argument regarding ground three is the same as their argument regarding ground two. Defendants argue that the second amended complaint does not specifically allege that the policy is irrational or unconnected to valid security concerns. As with the claim regarding Defendant Burk, a reasonable inference can be drawn that Plaintiff disagrees that a security concern exists regarding the material he requested. Further, the security concerns articulated by Defendants rely on facts not alleged in the second amended complaint. The

motion to dismiss for failure to state a claim should therefore be denied as to this claim.

## FAILURE TO PROSECUTE

Defendants argue that they are entitled to dismissal based on Plaintiff's failure to prosecute. Specifically, Defendants argue that though the second amended complaint was filed on September 8, 2006, it was not served on Defendants until June 5, 2008. As such, Defendants argue, Plaintiff has failed to prosecute his case in a timely manner.

Plaintiff has been granted leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1914A(a). The court screened Plaintiff's complaint pursuant to section 1915A(a) and directed service of process of the second amended complaint. The delay in service of the complaint is due to the court's large backlog of prisoner civil rights complaints and habeas corpus petitions. Plaintiff complied with all court orders and deadlines. Plaintiff is not responsible for delay in prosecution. The motion to dismiss for failure to prosecute is therefore denied.

## MOOTNESS

Defendants also argue that because Plaintiff is no longer incarcerated at the Merced County Jail, his claims are moot. Defendant cite to <u>Arizonans for Official English v. Arizona</u>, 520 U.S. 43 (1990). That case holds that "[T]o qualify as a case fit for federal-court adjudication, "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." 520 U.S. at 67. The central issue in any mootness challenge is whether changes in the circumstances existing when the action was filed have forestalled any meaningful relief. "[T]he question is not whether the precise relief sought at the time an application for an injunction was filed is still available. The question is whether there can be any effective relief. <u>West v. Secretary of Dept. of Transp.</u>, 206 F.3d 920, 925 (9th Cir. 2000). As to any claims for injunctive relief, such claims are moot because Plaintiff is no longer incarcerated at the Merced

County Jail. When an inmate seeks injunctive or declaratory relief concerning the prison where he is incarcerated, his claims for such relief become moot when he is no longer subjected to those conditions. See Weinstein v. Bradford, 423 U.S. 147 (1975); Enrico's, Inc. v. Rice, 730 F.2d 1250, 1255 (9th Cir. 1984). Even so, if Plaintiff, as here, has a continuing claim for damages, the action will not be dismissed as moot. Carey v. Piphus, 435 U.S. 247, 258-289 (1978).

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion to dismiss is granted as to Plaintiff's claim of loss of privileges.

2. Any claim for injunctive relief regarding Plaintiff's First Amendment claim of deprivation of religious items is denied as moot.

3. Defendants' motion to dismiss is denied as to Plaintiff's First Amendment claim for damages regarding deprivation of religious items.

4. This action is referred to the U.S. Magistrate Judge for the issuance of a scheduling order setting deadlines for the completion of discovery and the filing of dispositive motions.

IT IS SO ORDERED.

**Dated:   March 26, 2009**          /s/ Lawrence J. O'Neill
                                                        UNITED STATES DISTRICT JUDGE