# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDERICK JONES, | CASE NO. 1:06-cv-00665-LJO-SKO PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE DENIED AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED |
| v. | |
| JOHN BURK, et al., | |
| Defendants. | (Docs. 89, 92) |
| / | OBJECTIONS DUE WITHIN 30 DAYS |

Plaintiff Frederick Jones, Sr. ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"). Before the Court are motions for summary judgment from Plaintiff and from Defendants John Burk, Ricci Thoreson, and Barbara Carbonaro ("Defendants").

**I.   Procedural Background**

This action proceeds on Plaintiff's September 8, 2006 amended complaint. (Doc. #14.) On April 10, 2008, the Court screened Plaintiff's complaint and determined that it stated cognizable claims under Section 1983 against Defendants Burk, Thorenson and Carbonaro.[1] (Doc. #33.)

Defendants filed a motion to dismiss on July 24, 2008. (Doc. #44.) On March 26, 2009, the Court partially granted the motion to dismiss. (Doc. #50.) The Court dismissed Plaintiff's due

---

[1] The screening order was silent as to the viability of Plaintiff's claims under RLUIPA.

1

process claims and claims for injunctive relief. The Court allowed Plaintiff to proceed on his claims regarding the deprivation of certain religious items.

On June 23, 2009, Defendants filed a second motion to dismiss on the grounds that Plaintiff failed to exhaust his administrative remedies prior to filing suit. (Doc. #59.) On March 30, 2010, the Court partially granted the second motion to dismiss. (Doc. #81.) The Court determined that Plaintiff failed to exhaust his administrative remedies with respect to his claims based on the denial of prayer oil, prayer beads, and prayer clay. The Court allowed Plaintiff to proceed on his claims that he was denied a prayer rug, a copy of the Koran, and access to a Muslim cleric.

Plaintiff filed a motion for summary judgment on April 19, 2010. (Doc. #89.) Defendants filed an opposition to Plaintiff's motion for summary judgment on April 29, 2010. (Docs. #90-91.) Defendants also filed a cross motion for summary judgment. (Docs. #92-95.) Plaintiff filed a combined reply to Defendants' opposition and opposition to Defendants' motion for summary judgment on May 17, 2010. (Doc. #97.) Defendants filed a reply on May 27, 2010. (Docs. #98-99.)

**II.    Summary Judgment Legal Standard**

Under Federal Rule of Civil Procedure 56, summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(c)(2). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. "Where the moving party will have the burden of proof on an issue at trial"-usually, but not always, the plaintiff-"the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." Soremukun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). In this situation, the movant

carries the burden of establishing a prima facie case on their motion for summary judgment. UA Local 343 United Ass'n of Journeymen & Apprentices of Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO v. Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1471 (9th Cir. 1994) (internal citations omitted).

"A moving party without the ultimate burden of persuasion at trial-usually, but not always, a defendant-has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

**III.    Plaintiff's Motion for Summary Judgment**

    **A.    Summary of Plaintiff's Motion**

Plaintiff's motion for summary judgment consists of an eight-page recitation of the legal standards relevant to motions for summary judgment. Plaintiff does not apply those standards to his case, or demonstrate how his evidence establishes a prima facie case for a violation of the Free Exercise Clause under Section 1983. Plaintiff only offers vague conclusions that he is "entitled to offer evidence in support of the claims" and that "the evidence Plaintiff's[sic] offer in support is a un-disputed fact that, the defendant's[sic] in this case denied Plaintiff his reasonable right to practice his religion, that denied/deprived him of (prayer rug), (qur'an), & (access to muslim cleric)." (Pl's Mot. for Summ. J. P. & A. & Decl. 7, ECF No. 89.) Plaintiff's motion fails to demonstrate how the facts are undisputed, other than his insistence that the facts are not in dispute.

Plaintiff has attached his own affidavit in support of his motion for summary judgment. In relevant part, the affidavit states that Plaintiff was housed in the Merced County Jail and that he was

4

denied various privileges for a thirty-day period after he was involved in a fight. The remainder of Plaintiff's affidavit appears to consist only of complaints about the Court's ruling on Defendants' previous motion to dismiss.

Plaintiff has also included a statement of undisputed facts. Plaintiff lists various facts that are purportedly undisputed because Defendants admitted to these facts in their "answers." Plaintiff has also attached other documents to his motion for summary judgment. Plaintiff has attached copies of Defendants' objections to the Magistrate Judge's findings and recommendations with respect to Defendants' motion to dismiss and has also attached the order partially granting the motion to dismiss. It is unclear how these documents are relevant to Plaintiff's motion for summary judgment. Plaintiff has also attached a copy of Defendants' answer to Plaintiff's complaint, annotated with Plaintiff's own commentary. On the margins of the answer, Plaintiff has written comments to Defendants' answers, such as "a lie," "not qu'ran," "admittance," and "I agree." Plaintiff has also included a copy of the Magistrate Judge's findings and recommendations, annotated with what appears to be handwritten smiley faces next to the sections Plaintiff approves.

Defendants' opposition contends that Plaintiff has failed to offer any evidence to support his motion for summary judgment. Defendants also note that Plaintiff's affidavit fails to discuss any matters relevant to Plaintiff's motion for summary judgment. Defendants have also filed a cross motion for summary judgment arguing they are entitled to summary judgment. See discussion infra Part IV.

**B.     Discussion**

The Court finds that Plaintiff has clearly failed to carry his burden of demonstrating an absence of a genuine issue of fact on his motion for summary judgment. Plaintiff's motion fails to discuss the elements of a free exercise claim under Section 1983. Plaintiff's motion does not offer any relevant evidence nor does it cite to any relevant evidence that would support the elements of a free exercise claim.

Local Rule 260(a) requires Plaintiff to submit a "Statement of Undisputed Facts" along with his motion for summary judgment. Plaintiff's statement of undisputed facts consists of a list of facts Defendants purportedly admitted to in their "answers." However, Plaintiff fails to present any

5

coherent argument as to how the undisputed facts are sufficient to establish a prima facie claim under the First Amendment or RLUIPA. Plaintiff's motion does not contain any discussion of the elements of a cause of action under the First Amendment or RLUIPA and does not contain any arguments demonstrating how the undisputed facts satisfy each element of a cause of action. The facts in Plaintiff's statement of undisputed facts are not sufficient to establish a prima facie free exercise claim or claim under RLUIPA.

Plaintiff's motion contains only a vague discussion of summary judgment legal standards and conclusory statements regarding the undisputed nature of the facts relevant to his claims. Plaintiff must present evidence to support the elements of his claims – which he has failed to do. The facts raised in Defendants' opposition and cross motion for summary judgment clearly establish factual disputes that render summary judgment in Plaintiff's favor inappropriate. Accordingly, the Court will recommend that Plaintiff's motion for summary judgment be denied.

### IV.     Defendants' Motion for Summary Judgment

#### A.     Summary of Defendants' Motion

Defendants contend in their motion for summary judgment that there is no genuine issue of material fact because Plaintiff was provided with a prayer rug, a copy of the Koran, and access to a Muslim cleric. Defendants also argue that they are entitled to qualified immunity.

Defendants argue that Plaintiff arrived at the Merced County Jail on April 27, 2006. On May 17, 2006, Plaintiff spoke with Sergeant Barbara Carbonaro regarding his request for a copy of a Koran. Carbonaro told Plaintiff that he could have a Koran. Plaintiff also requested prayer oil, but Carbonaro told Plaintiff that oil would not be permitted in the jail. Plaintiff filed a grievance on May 17, 2006, claiming Carbonaro denied Plaintiff's requests for a Muslim cleric to bring Plaintiff a Koran, prayer oil, a prayer cap, prayer beads, and prayer books. Carbonaro responded to the grievance on May 18, 2006, and told Plaintiff he could have a copy of the Koran. Plaintiff did not ask for any of the other items when they spoke. Defendant also stated she would contact the chaplain to arrange for a Muslim cleric to visit Plaintiff and bring him a copy of the Koran. The same day, Carbonaro contacted the chaplain.

///

The chaplain visited with Plaintiff two days later and asked Plaintiff if he had a copy of the Koran at home, or if there was a friend or relative who could provide Plaintiff with a copy of the Koran. Plaintiff told the chaplain that he did not have access to one. The chaplain then told Plaintiff he would arrange for a Muslim cleric to visit Plaintiff and possibly provide Plaintiff with the requested items. The chaplain found a Muslim cleric in June 2006 and informed the cleric of the items Plaintiff had requested. The cleric visited Plaintiff in July 2006 and brought the requested items. Plaintiff was permitted to have the prayer rug, a copy of the Koran, and the prayer books, but his requests for the prayer oil, prayer beads, and prayer clay were denied.

Defendants argue they are entitled to summary judgment as a matter of law because Plaintiff was provided with a prayer rug, a copy of the Koran, and access to a Muslim cleric. Defendants further note that any delay in the receipt of these items was not caused by their acts or omissions. Defendants contend that there has been no violation of Plaintiff's constitutional rights. Defendants further contend that even if there had been a violation of Plaintiff's constitutional rights, Defendants did not violate clearly established law and are therefore entitled to qualified immunity.

In his opposition, Plaintiff argues Defendants' contentions are untrue. It is difficult, however, to determine precisely how Plaintiff disputes Defendants' contentions because Plaintiff has failed to reproduce Defendants' statement of undisputed facts and has failed to admit those facts which are undisputed or deny those facts which are disputed. The Court will note where Plaintiff's allegations and arguments clearly dispute the allegations and arguments made by Defendants. However, it is extremely difficult for the Court to determine exactly how the facts are in dispute.[2]

///

---

[2] For example, Defendants contend that Plaintiff told the Chaplain that he did not have any friend or relative who could provide Plaintiff with a copy of the Koran. (Defs.' Separate Statement of Undisputed Facts in Supp. of Cross Mot. for Summ. J. or, Alternatively, Summ. Adjudication of Issues 4:1-6, ECF No. 93.) It is unclear whether Plaintiff disputes this because his arguments are rambling and confusing. (Pl.'s Response & Reply 3, ECF No. 97.) ("More over[sic] it is untrue for the Defendants B. Carbonaro to state that Plaintiff had a brother who stayed 20 minutes away, who were willing to bring Plaintiff a Holy Qur'an to the window/desk as directed to do so. So why does B. Carbonaro make a statement if someone brought it to the desk/window and who is she speaking of other then the cleric?? B. Carbonaro would not allow it and stated to Plaintiff that it had to come from a cleric.") Plaintiff also states that he told the chaplain that "the Defendant would not allow my family member to bring me a Qur'an due to it not coming directly from Barns & Noble or directly from a Muslim cleric." (Pl.'s Surreply Declaration/Affidavid[sic], in Support of Reply to Def.'s Cross Mot. for Sumjm. J., Etc. . . . . 2, ECF No 97.) It is unclear whether Plaintiff's brother actually had a copy of the Koran and was willing to bring it to Plaintiff.

Plaintiff claims he requested the religious artifacts upon his arrival at the Merced County Jail and received them after four months. Plaintiff contends his requests for religious artifacts were not seriously addressed by jail officials until after Plaintiff filed suit. Plaintiff also contends Defendant Carbonaro responded to Plaintiff's grievance and told Plaintiff "this department don't allow that stuff, and you will not be able to receive it neither, soon." (Pl's Response & Reply to Defendants[sic] Opp'n to Pl.'s Summ. J. Mot. 2, ECF No. 97.) Plaintiff argues Defendant Burk also denied Plaintiff's grievance.

The remaining arguments in Plaintiff's opposition are confusing. Plaintiff makes statements regarding whether his brother was willing to deliver religious artifacts to the jail and regarding whether a cleric brought Plaintiff a hard bound copy of the Koran. Plaintiff also mentions a dispute regarding Defendants' failure to respond to written depositions. However, it is unclear how these facts support Plaintiff's claims.

Plaintiff has also attached his affidavit that describes a conversation between Plaintiff and the jail chaplain. Plaintiff informed the chaplain that Carbonaro told Plaintiff he may not receive a copy of the Koran from his brother because of security concerns. Plaintiff was told that his copy of the Koran must come directly from the book store (Barnes and Noble) or from a Muslim cleric. Plaintiff told the chaplain about his "minister" and the chaplain contacted the minister, who visited Plaintiff the next day. Plaintiff's minister visited Plaintiff again in June 2006 and brought Plaintiff educational books and a prayer rug. Plaintiff contends the minister did not give him a Koran. Plaintiff asked Defendant Carbonaro for a copy of the Koran again, but his request was denied. Carbonaro told Plaintiff that he could not have it because there could be weapons or drugs hidden inside the hard-bound cover.[3]

**B.    Discussion**

    **1.    Sufficiency of Plaintiff's Evidence**

The Court notes that the only evidence offered on Plaintiff's behalf are his own affidavits. However, the Court may also construe Plaintiff's verified complaint and opposition as opposing

---

[3] It is unclear whether Carbonaro would have granted Plaintiff's request if the copy of the Koran was not hard-bound.

affidavits for the purpose of ruling on Defendants' motion for summary judgment. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) ("because [the plaintiff] is pro se, we must consider as evidence in his opposition to summary judgment all of Jones's contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [the plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true and correct.")

Defendants argue that there is no material factual dispute because Defendants made a good-faith effort to provide Plaintiff with access to a prayer rug, a copy of the Koran, and access to a Muslim cleric. Several allegations in Plaintiff's complaint and opposition refute these facts and are facts that would be within Plaintiff's personal knowledge and would be admissible.

First, Plaintiff alleges in his complaint that he filed an administrative appeal requesting permission to receive a religious skull cap, prayer oil, a prayer rug, prayer clay, and prayer beads.[4] (2nd Am. Compl 4, ECF No. 14.) Plaintiff alleges that Defendant Carbonaro responded to the administrative appeal and told Plaintiff that "this department don't allow that stuff and you will not be able to receive it neither." (2nd Am. Compl 4, ECF No. 14.) Plaintiff presented the appeal to Burk, who also denied it. Plaintiff allegedly spoke with the jail chaplain on a later date, and was told to contact a Muslim cleric. Plaintiff allegedly spoke with a cleric who provided Plaintiff with educational books, prayer bead, prayer oil, and a prayer cap. Plaintiff did not receive a Koran and the jail chaplain allegedly told Plaintiff the jail would not allow Plaintiff to possess any other religious artifacts. Plaintiff's complaint also alleges Defendant Thorenson denied an appeal from Plaintiff concerning the receipt of certain religious artifacts.[5]

Defendants suggest there is no genuine issue of material fact because Plaintiff was eventually given a prayer rug, a copy of the Koran, and access to a Muslim cleric. However, it is Plaintiff's

---

[4] This lawsuit only concerns the receipt of the prayer rug, a copy of the Koran, and access to a Muslim cleric. The claims based on the denial of the other items were dismissed.

[5] With respect to the appeal processed by Defendant Thorenson, it is unclear whether the appeal concerned the claims still viable in this action. In other words, it is unclear whether the appeal concerned access to a prayer rug, a copy of the Koran, or a Muslim cleric. In the section of Plaintiff's complaint describing the incident, Plaintiff only mentions a request for prayer oil, prayer beads, a prayer cap, and prayer clay. Plaintiff has not submitted any evidence that suggests the appeal concerned a prayer rug, a copy of the Koran, or access to a Muslim cleric.

9

contention that he was initially denied those items and jail officials did not seriously act on Plaintiff's requests until after Plaintiff filed suit. Plaintiff has personal knowledge of when he was given access to his religious artifacts and can submit his testimony at trial as evidence supporting those facts. A reasonable jury can consider the evidence and determine that jail officials improperly interfered with Plaintiff's exercise of his religion.

Plaintiff alleges both Defendants Carbonaro and Burk denied Plaintiff's requests for a prayer rug. Plaintiff alleges Carbonaro told Plaintiff he would not be allowed to receive a prayer rug. Accordingly, Plaintiff has submitted evidence to create a reasonable dispute regarding whether Defendants Carbonaro and Burk interfered with Plaintiff's access to a prayer rug in violation of the Free Exercise Clause and RLUIPA.

In the affidavit attached to his opposition, Plaintiff alleges Defendant Carbonaro told Plaintiff he could only receive a copy of the Koran if it came directly from a Barnes and Noble or from a Muslim cleric. Carbonaro told Plaintiff he could not receive a copy of the Koran from a family member because of security concerns. Plaintiff further alleges a Muslim cleric visited him later with the items Plaintiff requested, but Plaintiff did not receive a copy of the Koran.[6] Plaintiff later asked Defendant Carbonaro for a copy of the Koran again, but Carbonaro told him that he could not have one because there could be contraband hidden in the cardboard cover of the Koran. The allegations and evidence are unclear, but it appears Carbonaro prohibited Plaintiff from receiving a hard-bound copy of the Koran. Plaintiff's complaint alleges that he did not receive "one hard back bound Qur'an." (2nd Am. Compl. 5, ECF No. 14.) Plaintiff has not alleged that he made any effort to obtain a soft-bound version of the Koran, or that Carbonaro did anything to prevent Plaintiff from acquiring a soft-bound version of the Koran.

It is difficult to interpret Plaintiff's vague and imprecise allegations and arguments, but it appears Defendant Carbonaro interfered with Plaintiff's ability to possess a copy of the Koran by prohibiting Plaintiff from receiving a Koran from any outside source unless it came from a bookstore

---

[6] Signficantly, it is unclear whether the Muslim cleric attempted to give Plaintiff a copy of the Koran. Plaintiff does not identify anything that any of the defendants did to prevent Plaintiff from receiving a copy of the Koran from the cleric.

10

or from a Muslim cleric. Plaintiff has also suggested that Defendant Carbonaro did not allow Plaintiff to possess a hard-bound copy of the Koran because of security concerns. Plaintiff has not submitted any other evidence that suggests Carbonaro did anything further to interfere with Plaintiff's access to a copy of the Koran.

The Court notes there are no allegations in Plaintiff's complaint or in his verified motions, oppositions, or other court filings demonstrating how any defendant interfered with Plaintiff's access to a Muslim cleric. Further, Plaintiff has not presented any evidence demonstrating how Defendant Thorenson interfered with Plaintiff's access to a prayer rug, or a copy of the Koran. Plaintiff has not presented any evidence demonstrating how Defendant Burk interfered with Plaintiff's access to a copy of the Koran. Accordingly, the only claims reasonably in dispute are Plaintiff's allegations that Defendants Carbonaro and Burk interfered with Plaintiff's access to a prayer rug and Plaintiff's allegations that Defendant Carbonaro interfered with Plaintiff's access to a copy of the Koran. The Court will recommend Defendants' motion for summary judgment be granted with respect to Plaintiff's other claims.

### 2. Qualified Immunity

Defendants argue that they are entitled to qualified immunity because their actions did not violate Plaintiff's rights and they did not violate any clearly established law. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" Id. (quoting Groh v. Ramirez, 540 U.S. 551, 567 (2004)).

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court mandated a two-step sequence for resolving government officials' qualified immunity claims. First, a court must determine whether the facts alleged or shown make out a violation of a constitutional right. Saucier, 533 U.S. at 201. If a constitutional violation has been a established, the court must then determine whether the right at issue was clearly established at the time of the defendant's misconduct. Id. However, in Pearson,

the Supreme Court held that the two-step procedure does not have to be performed in order, and in some circumstances a court may "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 129 S. Ct. at 818.

### a. Foregoing Saucier Two-step Sequence

Under Pearson, the Court has discretion to determine which of the two prongs of the qualified immunity analysis should be addressed first. The Supreme Court has noted several benefits to the traditional Saucier sequence of first determining whether the facts make out a violation of constitutional or statutory rights. First, "there are cases in which there would be little if any conservation of judicial resources to be had by beginning and ending with a discussion of the 'clearly established' prong." Pearson, 129 S. Ct. at 818. Second, determination of whether the facts constitute a violation "promotes the development of constitutional precedent and is especially valuable with respect to questions that do not frequently arise in cases in which a qualified immunity defense is unavailable." Id.

However, the Court will forego determination of whether Plaintiff's facts constitute a constitutional violation because the costs greatly outweigh the benefits. "Although the first prong of the Saucier procedure is intended to further the development of constitutional precedent, opinions following that procedure often fail to make a meaningful contribution to such development." Id. at 819. Such is certainly the case here. The record is not well-developed. Plaintiff is representing himself pro se and has not set forth his facts in a precise manner. Defendants correctly note that Plaintiff has failed to comply with Local Rule 260 by failing to reproduce Defendants' statement of undisputed facts and admitting those facts which are undisputed and denying those facts which are disputed. Although Plaintiff has disputed Defendants' version of the facts in his complaint and opposition, Plaintiff's filings have left the Court with only a vague understanding of the nature of Plaintiff's allegations and his arguments. Moreover, Plaintiff's opposition lacks any argument with respect to Defendants' assertion of the qualified immunity defense. Neither party has raised substantial arguments or evidence as to whether Defendants' actions were reasonably related to legitimate penological interests or whether Defendants' actions furthered a compelling governmental

interest and did so by the least restrictive means. The arguments and allegations made in Plaintiff's filings are confusing. A decision rendered by this Court on such a scant record would have little precedential value. Accordingly, the Court will forego the traditional Saucier sequence and resolve Defendants' claim regarding qualified immunity by first addressing whether Defendants violated clearly established law.

### b.  Defendants Are Entitled to Qualified Immunity

The Court finds that Defendants did not violate any clearly established law. The Court notes Plaintiff's opposition fails to address Defendants' qualified immunity claim. Plaintiff bears the burden of demonstrating that the right allegedly violated was clearly established at the time of the incident. Green v. Camreta, 588 F.3d 1011, 1031 (9th Cir. 2009). To defeat Defendants' claim to qualified immunity, Plaintiff must identify statutes or precedent that would have put Carbonaro and Burk on notice that their denial of Plaintiff's administrative appeal requesting a prayer rug violated clearly established law. Plaintiff must also identify sources that would have put Defendant Carbonaro on notice that the restrictions he imposed (prohibiting Plaintiff from receiving a copy of the Koran unless it came from a bookstore or from a cleric, and prohibiting Plaintiff from receiving a hard-bound copy of the Koran) violated clearly established law. Plaintiff has made no effort to identify any sources that would have put Defendants on notice that their conduct violated clearly established law.

The Ninth Circuit has affirmed a district court's grant of summary judgment against a Muslim inmate's free exercise claim against prison officials who prohibited him from purchasing hygienic prayer rugs. Akbar v. Gomez, 122 F.3d 1069 (9th Cir. 1997)[7]. Other circuits have rejected free exercise claims from incarcerated persons based on the confiscation or prohibition of religious property. See Pressley v. Beard, 266 Fed. Appx. 216, 218-19 (3d Cir. 2008) (confiscation of Muslim inmates hard-bound Koran, prayer rug, and kufi was in furtherance of legitimate penological objectives and did not violate First Amendment); Arguello v. Duckworth, 106 F.3d 403 (7th Cir. 1997) (affirming district court's grant of summary judgment against plaintiff challenging regulations

---

[7] Unpublished decisions may inform a court's qualified immunity analysis. Al-Kidd v. Ashcroft, 598 F.3d 1129, 1135 (9th Cir. 2010).

13

prohibiting possession of certain religious artifacts). At least one district court has determined that certain policies restricting the possession of religious items do not violate the First Amendment. See Shepard v. Peryam, 657 F. Supp. 2d 1331, 1352 (S.D. Fla. 2009) (policy banning possession of prayer rugs was related to reasonable security concerns and did not violate First Amendment). One district court has dismissed an inmate's claim that a restriction prohibiting Muslim inmates from ordering prayer oil unless it was ordered through the prison's chaplain violated the First Amendment. Jenkins v. Glover, No. 09-2145 FSH, 2009 WL 2391278, at *6-7 (D.N.J. July 31, 2009). The Court notes that the restrictions alleged in Plaintiff's complaint are far less restrictive as they allow Plaintiff to purchase a copy of the Koran from a bookstore or receive a copy from a Muslim cleric, so long as it is not a hard-bound copy.

In sum, Plaintiff has filed to identify, and the Court is unable to find, any case or statute that would have reasonably put Defendants on notice that temporarily prohibiting Plaintiff from possessing a prayer rug, prohibiting Plaintiff from receiving copies of the Koran unless it came from a bookstore or from a Muslim cleric, or prohibiting Plaintiff from possessing a hard-bound copy of the Koran violated the First Amendment. Accordingly, Defendants are entitled to qualified immunity with respect to Plaintiff's First Amendment claims.

Similarly, the Court is unable to find any authority that would have put Defendants on notice, at the time of their actions in 2006, that they violated RLUIPA. Accordingly, the Court finds that Defendants did not violate clearly established law. See Warsoldier v. Woodford, 418 F.3d 989, 997 n.7 (9th Cir. 2005) ("There exists little Ninth Circuit authority construing RLUIPA."). Defendants are entitled to qualified immunity with respect to Plaintiff's RLUIPA claims.

## V.     **Conclusion and Recommendation**

The Court finds that Plaintiff has failed to submit any substantial evidence in support of his claim that Defendant Thorenson interfered with Plaintiff's access to a prayer rug and a copy of the Koran. Plaintiff has failed to submit any substantial evidence in support of his claim that Defendant Burk interfered with Plaintiff's access to a copy of the Koran. Plaintiff has failed to submit any substantial evidence in support of his claim that any Defendant interfered with Plaintiff's access to a Muslim cleric. Accordingly, the Court will recommend that Plaintiff's motion for summary

judgment be denied.

The Court also finds that Plaintiff has not demonstrated that Defendants violated clearly established law. Plaintiff has failed to identify any case or statute that would have put Defendants on notice that temporarily prohibiting Plaintiff from possessing a prayer rug violated the First Amendment or RLUIPA. Plaintiff has failed to identify any case or statute that would have put Defendants on notice that prohibiting Plaintiff from receiving a copy of the Koran unless it came from a book store or a Muslim cleric violated the First Amendment or RLUIPA. Plaintiff has failed to identify any case or statute that would have put Defendants on notice that prohibiting Plaintiff from possessing a hard-bound copy of the Koran violated the First Amendment or RLUIPA.

The Court will recommend that Defendants' motion for summary judgment be granted. The Court will decline to address the other grounds raised in Defendants' motion for summary judgment.

Accordingly, it is HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment be DENIED; and

2. Defendants' motion for summary judgment be GRANTED and Plaintiff's claims against Defendants be dismissed.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten (10) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   December 1, 2010**            /s/ Sheila K. Oberto
                                     UNITED STATES MAGISTRATE JUDGE